**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38120**

| | | |
|---|---|---|
| **MICHAEL F. FOLDESI,** | ) | **2012 Unpublished Opinion No. 506** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: June 6, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Order dismissing application for post-conviction relief, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Michael F. Foldesi appeals from the district court's order dismissing his application for post-conviction relief. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In 2007, Foldesi was found guilty by a jury of delivery of a controlled substance, I.C. § 37-2732(a), and being a persistent violator, I.C. § 19-2514. Foldesi appealed. In an unpublished opinion, this Court affirmed Foldesi's judgment of conviction and sentence. *State v. Foldesi*, Docket No. 34519 (Ct. App. Feb. 6, 2009). In May 2010, Foldesi filed an application for post-conviction relief based upon seven claims, including that he was denied a fair trial. Foldesi also filed a motion asking the district court to take judicial notice of the transcripts in his underlying criminal case for the purpose of reviewing his claims. In July, the state filed an answer and asserted that Foldesi's application should be dismissed because it failed to state a ground upon

1

which relief could be granted, raised some claims that should have been raised on direct appeal, and failed to raise a genuine issue of material fact because it contained bare and conclusory allegations unsubstantiated by admissible evidence. The state also filed a motion for summary dismissal and memorandum in support to which the state attached the transcripts of Foldesi's underlying criminal case.

On August 18, 2010, a hearing was held on the state's motion for summary dismissal. After that hearing, the district court entered an order dismissing all but one of Foldesi's claims for relief with prejudice. Specifically, while the district court concluded that Foldesi's claim that he was denied a fair trial when officers offered perjured testimony knowingly used by the prosecution to obtain a conviction was unsupported by admissible evidence, Foldesi was granted twenty days to supplement the record with such evidence. In the order, the district court explained that, if Foldesi presented admissible evidence supporting this claim within such time, the district court would conduct an evidentiary hearing on the issue. Thereafter, Foldesi submitted an affidavit of his brother in which he averred that, while he was sitting outside of the courtroom waiting to testify at Foldesi's trial and while a detective was in the courtroom, Foldesi's brother saw a long-haired male (who Foldesi's brother referred to as an "officer") exit the courtroom and heard the long-haired male discuss Foldesi's case and coach other males (who Foldesi's brother referred to as "state witnesses") with the aid of a notepad. Foldesi's brother further averred that, from what he observed and heard, the "witnesses" did not have independent knowledge of the facts and had to create their testimony so it would match that of the long-haired individual male, specifically as to where they were "strategically placed" during Foldesi's "alleged criminal activities." He also averred that, when one of the "witnesses" noticed Foldesi's brother listening, they all moved away from him.

On September 20, the district court entered an order dismissing Foldesi's application for post-conviction relief in its entirety with prejudice because the district court concluded that Foldesi failed to present any admissible evidence in support of his claim that he was denied a fair trial within the time period allowed. Foldesi appealed. However, such appeal was withdrawn for reasons that were clarified at a hearing before the district court on February 11, 2011. At that hearing, the state asserted that, at a telephonic status conference in October 2010, the September 20 dismissal of Foldesi's application was rescinded or continued proceedings were

2

allowed solely as to Foldesi's claim that he was denied a fair trial because of perjured testimony.[1] The following exchange then took place:

> [PROSECUTOR]       And then we set an evidentiary hearing for December 3rd of 2010.  And shortly before that we got notice that the Court was unavailable and we cancelled our witnesses.  And I think we just assumed that we were still contemplating an evidentiary hearing on [Foldesi's claim he that he was denied a fair trial].
>     . . . .
> [THE COURT]       And that's the one where I think there's an allegation that there was going to be testimony about police officers discussing their testimony during the course of the trial when there had been--the Court had instructed them not to discuss their testimony; is that correct?
> [PROSECUTOR]       I believe that's correct, yes.  So we're kind of at a--
> [THE COURT]       Well, that's why I'm bringing you folks in here, to bring the judge up to speed on this.
>         Is that your understanding as well, [Counsel], that the--
> [DEFENSE COUNSEL]       Yes.  Yes, your Honor.  As I understand it, there's only one issue pending in this court.
>         What happened is is that you said you were going to dismiss all claims but I could get the one claim--if I could get some information on the one claim, that you wouldn't dismiss that claim necessarily.  I think I was a one-day late or something like that with the affidavit coming into your court.
>         I got it--as soon as I got the affidavit, I gave it to the Court.  But in the meantime the case gets dismissed.  So I thought well, I better appeal.
>         So I appealed, and then we reopened it.  So that's why I did the motion to withdraw the appeal because there's still a pending issue.

Subsequently, the district court scheduled a hearing for April 1, 2011, on the issue of Foldesi's claim that he was denied a fair trial.  On March 23, 2011, Foldesi submitted an affidavit in which he described, with references to the transcript, the trial testimony of the police officers called to testify at trial.  He asserted that the testimony of an officer who did not discuss his testimony with the other officers differed from the testimony of the officers who he believed did discuss their testimony.

At the April 1 hearing, Foldesi called his brother to testify.  As noted by the district court, the brother's testimony differed from his affidavit.  The brother did not identify the people he

---

[1]       While there is no transcript of that conference, the record reflects that a telephonic conference was held on October 18, 2010.

observed in the courthouse hallway while he was waiting to testify as police officers or witnesses. He could not say what they discussed. After that testimony, the state asked to "renew [its] motion for summary dismissal" and the district court heard argument on the motion.[2] During the state's argument, the state asked the district court to take judicial notice of the trial transcript. At the conclusion of Foldesi's argument on the motion, the district court stated:

> Well, let me lay the ground work for what the court can consider in a motion of this kind. I know I was asked to take judicial notice of the transcript of the trial. And I--at this point I will decline to do that because I don't need to focus upon [Foldesi's brother's] trial testimony.[3]
>
> . . . .
>
> What I have here given [Foldesi's brother's] testimony is greatest inferences. He said there were some people discussing things, going over perhaps what they were going to testify to, which is--which is not--frankly, that's not uncommon and that's not prohibited. What's prohibited is someone coming out and saying, well, this is what I testified to. And then if someone says, well, based on what you testified to, I'm going to alter or change my testimony. That could potentially be the kind of event that changes the outcome of a trial and I don't have that. I have none of that here.
>
> . . . .
>
> And so I would have to speculate. I would have to frankly speculate that any of this occurred and it was--I'm not allowed to speculate. I can certainly give reasonable inferences to a witness's testimony.
>
> But at best what it comes down to is there was some--some perhaps police officers. That hasn't been verified. I would assume that certainly Mr. Foldesi might--[Foldesi's brother] could have been given an opportunity to identify them and say yes, now that their identity is presented to me, I remember this person and this coming out of the courtroom. This was a peace officer now that I've seen him. But I don't have any of it.
>
> And I'm left in a position where I have to speculate that, A, somebody came out of the courtroom; B, that they've discussed their testimony with

---

[2] We note that the state's request to renew its motion for summary dismissal was an inaccurate characterization of such request. Procedurally, it appears that the district court granted the state's motion for summary dismissal with the exception of the perjured testimony claim and then conducted an evidentiary hearing pursuant to I.C. § 19-4907 on that claim, after which the application was dismissed in its entirety.

[3] It is not clear that the district court was referring to Foldesi's request to take judicial notice. The district court's reference to the brother's trial testimony was likely a response to the state's invitation to consider the brother's affidavit in light of his trial testimony, which had been rejected by the jury. In other words, the state was arguing that the brother lacked credibility. What is plain from the record is that both Foldesi and the state requested that the district court take judicial notice of the trial transcripts.

perspective witnesses; and, C, that somehow that testimony was altered, changed or amended. And I have none of that before the court.

I recognize and respect the fact that that's not an easy proposition to prove, but, nevertheless, there's not sufficient evidence here for the court based upon giving--and giving the testimony every reasonable inference, I can't find that there's been a showing made that the witnesses' testimony was altered or changed or that there was a violation of the court's order to the witnesses not to discuss their testimony with other witnesses.

And, therefore, I can't find that the outcome of this case has been altered or changed in any way.

Thereafter, the district court entered a written order dismissing Foldesi's application in its entirety with prejudice. The district court explained that, after hearing testimony and argument at the evidentiary hearing on April 1, while Foldesi claimed that the state's witnesses spoke with each other about their testimony during the trial and offered perjured testimony, Foldesi failed to present testimony that would establish that the state's witnesses were talking about their testimony during trial. The district court also explained that Foldesi failed to present any evidence that the state's witnesses had offered perjured testimony. Accordingly, the district court concluded that Foldesi failed to present evidence establishing an essential element on which he bore the burden of proof. Foldesi appeals.

## II.

## STANDARD OF REVIEW

An application for post-conviction relief initiates a proceeding that is civil in nature. *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). An application for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). An application must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached or the application must state why such supporting evidence is not included with the application. I.C. § 19-4903. In other words, the application

5

must present or be accompanied by admissible evidence supporting its allegations or the application will be subject to dismissal.

When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

### III.

### ANALYSIS

Foldesi argues that the district court erred by "summarily dismissing" his claim that he was denied a fair trial at the April 1 "summary dismissal hearing." Specifically, Foldesi asserts that, by submitting affidavits prior to that hearing and presenting the testimony of his brother at the hearing, he presented an issue of material fact regarding whether the officers who testified at Foldesi's trial offered perjured testimony knowingly used by the prosecution to obtain a conviction. Therefore, Foldesi argues, while he did not prove this claim by a preponderance of the evidence at the April 1 hearing, he did supply evidence sufficient to withstand summary dismissal of the claim and the proper course of action was for the district court to conduct an evidentiary hearing on the issue.

Foldesi's assertion that the April 1 hearing was a summary dismissal hearing at which the district court summarily dismissed his claim that he was denied a fair trial is belied by the record. As described above, after Foldesi submitted the affidavit of his brother and after the February 11 hearing, the district court scheduled a hearing for April 1 to specifically address the issue of Foldesi's claim that he was denied a fair trial. Thus, the district court agreed that Foldesi raised an issue of material fact requiring an evidentiary hearing. After the April 1 hearing, the district court entered an order dismissing Foldesi's application in its entirety with prejudice. In that order, the district court stated:

> The matter having come before the Court for evidentiary hearing on April 1, 2011, and the Court having heard testimony and argument, the Court hereby orders the dismissal of [Foldesi's claim that he was denied a fair trial] in

6

the Petition for Post-conviction relief. Because the Court previously dismissed the other claims the Court hereby orders the Petition for Post-conviction relief is hereby dismissed.

The district court has already provided Foldesi with the relief he requests on appeal--an evidentiary hearing on the issue of whether he was denied a fair trial. Accordingly, Foldesi has not shown that the district court erred by summarily dismissing his claim that he was denied a fair trial because the claim was not summarily dismissed.

Foldesi also argues that the district court erred by failing to take judicial notice of the trial transcript of his underlying criminal case. Foldesi asserts that the transcript was relevant because it showed, as Foldesi alleged in his March 23 affidavit, that officers had an opportunity to discuss their testimony, that those officers gave similar testimony, and the officer who did not have such an opportunity did not give similar testimony. Foldesi argues that, because both he and the state requested that the district court take judicial notice of the trial transcript, pursuant to I.R.E. 201, the district court was required to take such notice.

Indeed, I.R.E. 201(d) provides that a court is required to take judicial notice of transcripts in the same or a separate case if the specific transcripts are identified by the party requesting that the court take judicial notice or the party proffers to the court and serves on all parties copies of such transcripts. Here, in his March 23, 2011, affidavit, Foldesi referred to the specific portions of the transcripts by page and line number that he believed to be relevant and he renewed his request that the court take judicial notice. The district court had the transcripts available because they were appended to the state's motion to dismiss. Under these circumstances, we conclude that the district court erred by not taking judicial notice of the trial transcript in Foldesi's underlying criminal case. However, it is not sufficient to simply show error on the part of the district court. Idaho Rule of Civil Procedure 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

7

As Foldesi asserts, the information in the trial transcript that he wanted the district court to review with respect to the claim that he was denied a fair trial was the same information he presented to the district court in his March 23 affidavit that was before the district court at the April 1 hearing. Additionally, while Foldesi acknowledges that he failed to prove his claim by a preponderance of the evidence at the April 1 hearing, he does not argue that such failure was attributable to the district court's error. Foldesi's March 23 affidavit, and the portions of the trial transcript identified by him, refer primarily to inconsistencies in the testimony of police officers and a confidential informant. Specifically, Foldesi refers to discrepancies regarding the distance between Foldesi's car and a vehicle occupied by the confidential informant and a police officer, discrepancies in the description of that vehicle (whether it was a car or a pickup), discrepancies in the testimony of an officer who recorded the controlled buy regarding whether the confidential informant exited the vehicle, and discrepancies in testimony regarding the location of vehicles during the controlled buy. The inconsistencies observed by Foldesi do not demonstrate perjury by the officers.

Foldesi has not shown that the district court's error in not taking judicial notice of the trial transcripts affected his substantial rights because the trial transcript does not support his claim. The district court's refusal to take judicial notice of the trial transcript in Foldesi's underlying criminal case does not appear inconsistent with substantial justice. Thus, the error by the district court does not require reversal of the order dismissing Foldesi's application for post-conviction relief.

## IV.
## CONCUSION

The district court held an evidentiary hearing with respect to Foldesi's claim that he was denied a fair trial, and Foldesi's argument that the district court erred by not conducting such a hearing is belied by the record. Further, while the district court erred by not taking judicial notice of the trial transcript of Foldesi's underlying criminal case, Foldesi has not shown that the district court's error affected his substantial rights. Therefore, the district court's order dismissing Foldesi's application for post-conviction relief is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**