**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38205**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 610 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 29, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TARA JEAN CRIST, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jason M. Gray, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Tara Jean Crist appeals from her judgment of conviction for possession of a controlled substance. Specifically, she asserts the district court erred by denying her motion to withdraw her guilty plea. We affirm.

**I.**

**FACTS AND PROCEDURE**

On January 23, 2010, a law enforcement officer initiated a traffic stop of a vehicle, in which Crist was a passenger. Crist exited the vehicle after the driver pulled over to the side of the road. The officer directed Crist to return to the vehicle and she complied. The officer noticed Crist appeared anxious and had bloodshot, glossy eyes. Upon the officer's questioning regarding drugs, the driver revealed there was a pipe in the vehicle. The officer searched the inside of the vehicle and located drug paraphernalia and a small quantity of methamphetamine.

1

The driver admitted ownership of the methamphetamine. An additional search around the area where Crist had exited the vehicle produced a small pouch containing another quantity of methamphetamine and a receipt from a local store. Upon investigation, a clerk at that store, who had been working at the time the receipt was printed, positively identified Crist from a photo line-up as the person who had been in the store. As further evidence tending to show the pouch containing methamphetamine belonged to Crist, the driver indicated in an interview with police that she and Crist had consumed methamphetamine prior to the traffic stop and that when Crist got back into the vehicle upon the officer's request during the traffic stop, Crist had stated to the driver, "I just got rid of mine." The driver understood this to mean that Crist had just disposed of her (Crist's) methamphetamine. Crist later tested positive for methamphetamine.

The State charged Crist with possession of a controlled substance and possession of drug paraphernalia. Subsequently, Crist decided to enter an *Alford*[1] plea to the charge of possession of a controlled substance pursuant to a plea offer, and the State agreed to dismiss the other charge and recommend drug court. At the plea hearing, the judge was careful to explain, and Crist acknowledged, that she was not required to plead guilty and could proceed to trial. Crist was very emotional, but decided to go forward with the plea. Among other issues discussed at the hearing, the court explained an *Alford* plea, asked if Crist was pleading guilty because she did not want to risk losing the plea offer and advantage of drug court (to which Crist replied affirmatively), and again reiterated Crist was not obligated to plead guilty but could proceed to trial. The court recognized Crist's emotional state and granted recesses to Crist when necessary so she could consult with her attorney, compose herself, and "think about things." The court said it would "try to find a time [in the] afternoon to resume, if [she] wish[ed]." Ultimately, Crist pled guilty on an *Alford* plea after the court explained the validity of the plea, the possible penalties for possession of a controlled substance, and the procedure for gaining acceptance into drug court, and conducted a colloquy with Crist in order to ensure she understood her rights and waivers.

Two days after entry of the plea, Crist was scheduled to attend drug court. However, she was late to the appointment and, thereafter, the drug court would not accept her as a participant.

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

The district court set the case for sentencing and ordered a presentence investigation (PSI) report. At the sentencing hearing, defense counsel informed the court that Crist had not reviewed the PSI report and might wish to change her plea to not guilty. Crist arrived late to the sentencing hearing and consulted with her counsel. Defense counsel informed the court after the consultation that Crist wished to seek new representation and withdrawal of her guilty plea. As no motion had yet been filed, and defense counsel had not yet been discharged, the court scheduled a date to continue the sentencing hearing.

At the continued sentencing hearing, defense counsel informed the court that he met with Crist, let her review the PSI report, and believed she was ready to proceed with sentencing. However, when the court asked Crist if she was ready to proceed, she stated that she wanted to withdraw her plea and take the case to trial. The court permitted defense counsel to withdraw from representation and appointed a public defender for Crist. Through new defense counsel, Crist filed a motion to withdraw her plea. The reason Crist cited in support of the motion to withdraw her plea was that she no longer wished to accept the plea offer, but wanted to proceed to trial. At the evidentiary hearing on the motion to withdraw Crist's plea, defense counsel argued that Crist presented a just reason to withdraw her plea due to her mental state and the pressure from her former counsel to plead, and he called Crist to testify. Crist testified that the day she entered her *Alford* plea, she felt her former defense counsel did not have time for her case, he was unwilling to talk about aspects of the case beyond a single State witness, and she did not have the money that former counsel demanded in order to take her case to trial. She also proffered family and emotional issues that were affecting her mental state when she entered her plea. Evidence from the hearing also showed that Crist, though the plea offer recommended drug court, had not been accepted to the program because she was late in arriving to court and that Crist had access to the PSI report prior to filing the motion to withdraw her plea.

Following the hearing, the district court denied Crist's motion to withdraw her plea, finding she did not present a just reason. At the sentencing hearing later held, the district court imposed a unified sentence of seven years, with three years determinate, and retained

jurisdiction.[2]   Crist appeals, asserting the district court abused its discretion in denying her motion to withdraw her *Alford* plea.

## II.

## DISCUSSION

### A.    Standard of Review

As a threshold matter in considering a motion to withdraw a guilty plea, the district court considers whether or not the defendant entered the plea voluntarily.  Idaho Criminal Rule 11(c); *State v. Dopp*, 124 Idaho 481, 483-84, 861 P.2d 51, 53-54 (1993); *State v. Hanslovan*, 147 Idaho 530, 536, 211 P.3d 775, 781 (Ct. App. 2008).  Where a defendant has entered a voluntary plea, the decision to grant or deny a motion to withdraw a guilty plea lies in the discretion of the district court.  *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986).  Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion, as distinguished from arbitrary action.  *Id.*  This is done by looking at whether the lower court (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) reached its decision by an exercise of reason.  *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).  In regards to circumstances surrounding the plea, we will accept the trial court's findings of fact that are supported by substantial evidence.  *State v. Hawkins*, 115 Idaho 719, 720-21, 769 P.2d 596, 597-98 (Ct. App. 1989).

The ability to withdraw a plea is not an automatic right and the burden rests on the defendant to demonstrate a justification for withdrawing her guilty plea.  *State v. Acevedo*, 131 Idaho 513, 516, 960 P.2d 196, 199 (Ct. App. 1998).  If a motion is made before sentencing, the defendant's burden is to show that there is a "just reason" for withdrawing the plea.  *State v. Ward*, 135 Idaho 68, 72, 14 P.3d 388, 392 (Ct. App. 2000).  After sentencing, a defendant may only withdraw her plea upon a showing of a manifest injustice.  I.C.R. 33(c); *State v. Mayer*, 139 Idaho 643, 647, 84 P.3d 579, 583 (Ct. App. 2004).  There is a distinction in standards to avoid encouraging the defendant to plead guilty and test the potential punishment, and then withdraw

---

[2]   The court has since relinquished jurisdiction and sua sponte reduced Crist's sentence to a unified term of five years, with two and a half years determinate.

4

the plea if the sentence is unexpectedly severe. *Mayer*, 139 Idaho at 647, 84 P.3d at 583. Thus, although the court should liberally exercise its discretion to identify a just reason when presented, the court need not be so liberal when the defendant has learned the content of the PSI report or has received other information about the probable sentence. *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008). A motion to withdraw may be denied if the defendant fails to present and support a plausible reason for granting the withdrawal. *State v. Akin*, 139 Idaho 160, 162, 75 P.3d 214, 216 (Ct. App. 2003); *State v. McFarland*, 130 Idaho 358, 362, 941 P.2d 330, 334 (Ct. App. 1997). In considering the defendant's assertions to determine if they constitute a just reason, the good faith, credibility, and weight of the defendant's assertions in support of her motion to withdraw are matters for the court to decide. *State v. Knowlton*, 122 Idaho 548, 549, 835 P.2d 1359, 1360 (Ct. App. 1992).

## B.    Just Reason

Crist does not challenge the voluntariness of her plea, but asserts she established a just reason to withdraw her *Alford* plea, before sentencing, due to her mental state and the fact that her attorney pressured her into entering the plea. She claims there was no evidence that she decided to pursue withdrawing her plea either because she knew she would not be accepted into drug court or knew of information contained in the PSI report. The State responds that Crist's family stress and emotional state were not due to factors attributable to the State, Crist was given multiple opportunities to postpone entering a plea or decide to go to trial, and defense counsel did not impermissibly pressure Crist into pleading guilty. Furthermore, the State asserts the primary impetus for Crist's motion to withdraw her plea was due to her self-inflicted inability to participate in drug court, and the district court, in determining Crist's credibility and motive for wanting to withdraw her plea, was correct in finding Crist did not establish a just reason.

At Crist's plea hearing, she indicated she was feeling significant stress due to an impending family move and problems with her husband. The court offered to delay the hearing if Crist thought she "would be more emotionally at ease on a later day." Crist further explained her emotional state and attributed it to financial stress and post-partum depression. The court asked, "[W]ould you rather not proceed today or do you feel like you can--Would a recess help, taking ten minutes?" Crist opted to take the recess and discuss issues with her counsel, after which she indicated a willingness to proceed. The district court explained an *Alford* plea,

5

prompted by Crist's confusion regarding such a plea, and concluded the explanation by stating, "The purpose of an *Alford* plea generally is to try to gain the benefit of a plea agreement. In other words, you don't want to take the risk of losing the State's offer by going to trial. Is that fair to say that that's what's happening in your case?" Crist replied, "Yes, sir." The district court, nonetheless, did not feel comfortable to proceed because of Crist's emotional state and indicated she could continue with trial, set for the following day, if she wished. Crist insisted she was able to proceed. The district court specifically addressed Crist and said:

> I'm not convinced that emotionally you're ready to do this. And unless you're committed to it, I have this feeling that in three months you'll be back saying, 'I just didn't understand what I was doing. I was upset. Let me withdraw my plea.' And I'd rather not cross that bridge if we can avoid it.

The district court granted another recess over a lunch break for Crist to review discovery, discuss other matters with counsel, and decide whether to proceed with a guilty plea. During that recess Crist informed the court clerk to call off the jury for the following day, as it would not be necessary because Crist was moving forward with a plea. Back in court and on the record, the court informed Crist of the validity of an *Alford* plea, the maximum penalty for a conviction of possession of a controlled substance, and the procedures for gaining acceptance into drug court. Crist indicated that the possibility of drug court was an important part of the plea agreement. The court told Crist that drug court was not a guarantee, that if Crist was not accepted, or was accepted and failed the program, she would be sentenced in court just as any other person convicted of possession. Thereafter, the district court engaged in a colloquy to ensure Crist's entry of the plea was knowing, voluntary, and intelligent. The court again addressed the issue of later requests to withdraw a plea once entered and accepted:

> [The Court]: At this point then, do you understand that once you plead guilty you are admitting, even though it's an *Alford* plea, that you're guilty of this crime, and that once I accept a plea of guilty, there's no right or guarantee that you can withdraw that plea of guilty later if you change your mind? Do you understand that?
> [Crist]: Yes, sir.
> [The Court]: All right. Do you need any more time to think about this decision?
> [Crist]: No, sir.

The State made a factual proffer to support the charge, and Crist entered an *Alford* plea of guilty to the offense. The court was satisfied that Crist made a knowing, voluntary, and intelligent

6

entry of the plea. The court set the case for sentencing, but at sentencing, the court continued the matter due to a delay in getting the PSI report to Crist, the fact she had not yet reviewed the PSI report, and because she indicated she may want to withdraw her plea.

At the continued sentencing hearing, defense counsel informed the district court that Crist had reviewed the PSI report and was ready to proceed with sentencing. However, Crist indicated an intention to the contrary:

> Your Honor, to be truthful with you, I would like to be able to withdraw my plea and take it to trial because I don't feel that--you know, I was at the wrong place at the wrong time, you know. And my rap sheet is so ugly that it looks terrible when you look at this, but I've been a hard-working mother for ten years. No trouble, no nothing for ten years. And when I pleaded guilty, I pleaded guilty because it was an *Alford* guilty plea.

After listening to the State's position on a possible motion from Crist to withdraw her guilty plea, the court again asked Crist if she wanted to attempt to withdraw her plea. Crist replied:

> Yes, sir. When the judge before you was here, we had a recess, he let us out for a couple minutes because I wasn't sure I wanted to plead guilty, and so we came back in and, you know, started this all over again. But it just--I've worked very hard to try to be a good mother and a good worker and everything and I'm supposed to plead guilty to something I haven't done.

Thereafter, defense counsel was permitted to withdraw as counsel, the court appointed a public defender for Crist, and the court scheduled a hearing on the forthcoming motion to withdraw Crist's guilty plea. At the hearing on the motion to withdraw her plea, Crist testified that she was particularly upset on the day she entered her plea because she and her husband's home had just been sold, they were required to move quickly, and they had been fighting about finances and children. She further stated she felt sick on the day she entered the plea because she was being coerced into pleading guilty to something she did not do. She elaborated that she pled guilty because she felt her defense counsel did not have time for her case, did not provide her evidence or other discovery supporting the charge, and demanded more money to take the case to trial. She reiterated that she had not wanted to plead guilty from the beginning. On cross-examination, Crist admitted that at the plea hearing, she was feeling stress about weighing her options between a plea and a trial. She also admitted that at the change of plea hearing she recognized that drug court, upon the recommendation of the prosecutor and pursuant to the plea agreement, was a better option for her, considering her prior felony drug conviction and the possibility of

significant prison time if she took the case to trial and a jury convicted her. Crist acknowledged that she had not been accepted into drug court because she was late, but attempted to explain that it was because of a family move that she was late and that she had tried to get court rescheduled or postponed. Also on cross-examination, Crist denied each of the following: understanding the *Alford* plea; being informed of the consequences of such a plea or possible sentences if she was not accepted into drug court; receiving any discovery; and having multiple opportunities at the plea hearing to consult with counsel. Crist stated she was feeling stress at the hearing on the motion to withdraw, similar to the stress she felt when she was entering her plea, but continually asserted she was not guilty of the crime.

Though Crist continually asserted her innocence, which alone is not a just reason to withdraw an *Alford* plea, *Dopp*, 124 Idaho at 486, 861 P.2d at 56, she also proffered her emotional state and pressure from counsel as reasons to justify withdrawal. In *State v. Hawkins*, 117 Idaho 285, 787 P.2d 271 (1990), the Idaho Supreme Court held the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea because the defendant did not present a just reason to withdraw a valid, voluntary guilty plea even though his decision to plead was influenced by his emotional condition. *Id*. at 288-89, 787 P.2d at 274-75. Subsequently, in *Dopp*, 124 Idaho 481, 861 P.2d 51, the Supreme Court affirmed the denial of a motion to withdraw guilty pleas made on the basis that the defendant continually asserted he was innocent and under extreme emotional stress prior to entering his guilty pleas. There, the Supreme Court found that the defendant's severe emotional stress neither supported a finding that the pleas were entered involuntarily nor provided a just reason to withdraw those pleas. *Id.* at 483-86, 861 P.2d at 53-56. This Court has also concluded that considerable family pressures and emotional stress, which are not attributable to the State, do not render a plea invalid. *State v. Nath*, 141 Idaho 584, 586, 114 P.3d 142, 144 (Ct. App. 2005). We recognize that these cases also addressed the defendants' arguments that there was a constitutional defect in the plea, which Crist does not argue and is not necessary in order to show a just reason. *State v. Stone*, 147 Idaho 330, 333, 208 P.3d 734, 737 (Ct. App. 2009). However, they reaffirm that fear of what may happen at a trial, if pursued, versus a choice to accept a plea offer is the type of concern faced by any defendant who must decide whether to plead guilty. *State v. Wilson*, 126 Idaho 926, 930, 894 P.2d 159, 163 (Ct. App. 1995).

8

Additionally, a defendant does not present a just reason to withdraw a plea simply because she feels time constraints and pressure from counsel to make an inherently difficult choice between a favorable plea and the risk of trial. *See State v. Rose*, 122 Idaho 555, 835 P.2d 1366 (Ct. App. 1992). In *Rose*, the State offered the defendant a deal whereby the entry of guilty pleas to two charges would result in the dismissal of two other pending charges. The State also agreed to limit its sentencing recommendations to amounts specified in the plea offer. *Id*. at 556-57, 835 P.2d. at 1367-68. At the change of plea hearing, Rose indicated he felt coerced to plead guilty. When asked to explain, he said he felt that if he did not plead guilty, he would not be able to successfully defend himself against one of the pending charges, which would be dropped upon entry of guilty pleas pursuant to the plea offer. Rose then acknowledged it was in his best interest to plead guilty and have the worrisome charge dismissed. *Id*. at 557, 835 P.2d at 1368. Still, Rose said he did not want to plead guilty when the court inquired. The court granted a recess, wherein Rose consulted with his counsel, and upon reconvening, Rose decided to plead guilty to the two charges. He told the court his counsel had explained some issues during the recess and he was ready to proceed. The court explained the waiver of rights upon the entry of a guilty plea and accepted Rose's pleas. *Id*. After the hearing, Rose requested to withdraw his pleas and replace his counsel based on four assertions: (1) he did not understand the terms and conditions of the plea agreement at the time he entered into it; (2) he did not have a sufficient opportunity to discuss potential defenses with his counsel; (3) he was coerced into abandoning his defenses and entering pleas to crimes he did not commit; and (4) the investigation conducted to support his potential defenses was inadequate and misleading. The district court rejected Rose's arguments and concluded Rose did not show a just reason for withdrawing his plea. This court affirmed. *Id*. at 557, 560, 835 P.2d at 1368, 1371. Furthermore, even where the motion to withdraw is made before sentencing, a district court does not abuse its discretion when it bases a denial of the motion on the fact that the defendant has had an opportunity to test possible outcomes and later seek withdrawal of a plea because it now seems unfavorable. *See State v. Rodriguez*, 118 Idaho 957, 960-62, 801 P.2d 1308, 1311-13 (Ct. App. 1990) (affirming the denial of the defendant's motion to withdraw an *Alford* plea made before sentencing, but after a co-defendant was acquitted by a jury, determining there was no just reason "for allowing him a change of plea so that he can pursue a second option after he has tested out the first").

9

Looking to the facts and case law, the district court did not abuse its discretion in determining Crist failed to present a just reason to withdraw her plea. Importantly, the district court pointed out that Crist was fully aware of the possible consequences of her *Alford* plea before she entered it: Crist knew she had a prior felony drug conviction; she knew that because of a sentencing enhancement for the prior felony, the possible sentence on the charge of possession was double the normal statutory range of seven to fourteen years; and she knew that the State was recommending drug court as part of the plea agreement. The district court recognized Crist had weighed her options in making the difficult choice:

> [W]hen she testified about trying to make the decision whether to plead guilty today, she testified about the things any rational defendant would look at and that is she testified that she was trying to look at what could be worse; namely, taking the agreement or going to trial, could miss out on her kids' life and knew it was stressful. That's inherent in the criminal system. It's inherent that it's a difficult decision to decide to plead guilty to a felony when there may be defenses to it, there could be issues, and it is rational and the exact purpose of an *Alford* plea for a defendant to consider the benefits of taking the agreement versus the risks of going to trial. . . . So to think it could be stress free and to think that should not be looked at is--I mean, that's what defendants should do.
>
> So she made a difficult decision, and it's clear throughout the whole transcript that she was emotional, wasn't sure at certain points and had every opportunity to tell the Court, no, I need to go to trial, can't plead guilty to this, got to go forward. She was given plenty of opportunity to talk with her attorney and was asked by the Court in . . . the original change of plea hearing where she was under oath, and, nope, she had time to review the discovery; she had time to get her questions answered, and she went ahead and entered the plea.

In its consideration, the court noted Crist was struggling with the same weighing of options at the hearing on the motion to withdraw her guilty plea as she had previously at the change of plea hearing. The prevailing factor for the court, however, was that at the point Crist was testifying at the hearing on the motion to withdraw her plea, Crist no longer had the drug court recommendation--which was better than a recommendation for penitentiary time--because she arrived late for that court date. The district court found the situation was similar to a defendant reviewing the sentencing recommendations in the PSI report to see the probable sentence before seeking to withdraw a plea of guilty. The court determined that because of the unique situation

10

with drug court, it was clear here that "[t]he defendant had the chance to plead guilty and try out the sentences."[3]

We agree with the district court that the problems Crist wrestled with were considerations for any rational defendant contemplating the entry of a guilty plea, and as in *Rose*, this does not entitle Crist to later withdraw her plea. Crist was also aware that drug court was no longer an option at the point she filed her motion to withdraw her guilty plea and the district court appropriately took this into consideration when exercising its discretion. Crist was provided opportunities at the plea hearing to consult with defense counsel, knew the consequences of an *Alford* plea or proceeding to trial, and decided to accept the benefit of the plea offer. Crist's assertions of any impermissible pressure from counsel and allegations of lack of preparation for trial in terms of discovery and communication to Crist are belied by the record. The district court assessed Crist's credibility and found, "[I]t's not a just reason to simply allow a defendant to withdraw a plea based on new statements that directly contradict prior ones. They were under oath the same way, in the same courtroom, in the same context." The district court made clear there are situations that may justify allowing the withdrawal of a plea, but this was not such a case. There was no error in the district court's decision.

### III.

### CONCLUSION

We conclude the district court did not abuse its discretion in denying Crist's motion to withdraw her *Alford* plea because Crist did not present or support a just reason for granting withdrawal. Accordingly, we affirm Crist's judgment of conviction for possession of a controlled substance.

Chief Judge GRATTON and Judge LANSING **CONCUR.**

---

[3] The district court did not rely on any review Crist had of the PSI report because she had indicated a desire to withdraw her plea prior to any review of that report, even though the motion was not filed until after she had notice of the information contained therein. Nonetheless, because the district court did not rely on Crist's knowledge of the PSI report, we also do not consider whether Crist was aware of sentencing recommendations contained in the report.